THE STATE OF OHIO, APPELLEE, *v.* FOWLER, APPELLANT.

(No. 50254—Decided
November 18, 1985.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Michele M. Lazzaro* and *Charles W. Lazzaro,* for appellant.

ANN MCMANAMON, J. On October 14, 1984 at 7:00 p.m., Kimberly Fowler, a fourteen-year-old female, was reported missing to the Strongsville police by her mother and stepfather. An hour later, the child was located at a friend's residence and officers were dispatched to that address. They located Kimberly hiding behind some boxes in an upstairs cubbyhole. Her aspect was described as upset and scared. When the police asked why she had run away from home, Kimberly related that her stepfather had involved her in ongoing acts of incest, imposing oral sex upon her. She told police that she had seen a movie called "Something About Amelia" which dealt with the problem of incest, and at that time she realized "what had been going on in her life." Kimberly was relayed to the police station where she provided a written statement alleging that her stepfather initiated sexual activity with her when she was a third grader. She indicated that she had most recently been importuned by him the previous evening.

Shortly thereafter, defendant William Fowler was arrested. He waived his rights and voluntarily provided the following confession:

"Several times over the years I would ask Kim to preform [*sic*] sex with me, such as putting my male member in her hand and go back and forth. Then I would tell her to put in it her mouth untill [*sic*] I would cumm [*sic*]. I would suck her tits, I would feel her pubic hair and her clotis [*sic*]. I would tell Kim not to tell anyone about what we done."

On the following day, Fowler was questioned about his confession, and again indicated that his waiver of rights and confessions were true. He expressed relief to police that it was finally out in the open.

Defendant was indicted on four counts of rape for engaging in sexual conduct with a person less than thirteen years of age by force or threat of force, pursuant to R.C. 2907.02(A)(3). These counts were based upon sexual conduct with Kimberly during the years 1979, 1980, 1981, and 1982. Two additional counts of rape for the years 1983 and 1984 were also charged, pursuant to R.C. 2907.02(A)(1).

Fowler was released on bond. The conditions of his bond are not reflected in the record, although a Strongsville detective testified that it was recom-

mended to the municipal court that defendant not be allowed to move back home with Kimberly prior to trial. Defendant initially stayed with his sister, who lived next door to Kimberly. Nonetheless, for three to four months prior to trial, defendant moved back into the house where Kimberly, his wife and other children resided.

Defendant waived a jury and a bench trial ensued. During the proceeding Kimberly adamantly refused to testify as a prosecution witness. Despite threats of contempt and confinement, her persistent refrain was: "I refuse to answer that question."

Over objection by defense counsel, Patrolman Fringley was permitted to testify as to the initial statements Kimberly made when she was found in hiding by police. Further, and over defense counsel's objection, Kimberly's written statement was read into evidence and Officer Koloda was allowed to tell the court about Kimberly's oral statements implicating her stepfather which the child made the next morning and six months after Fowler's arrest.

The court found defendant guilty on all six counts and imposed concurrent life sentences on the first four counts, and sentences of seven to twenty-five years on the remaining two counts. The latter sentences were concurrent, but consecutive to the first four sentences. Three errors are assigned for our review.[1]

## I

For his first assignment of error, defendant challenges the trial court's admissions of the oral declarations by Kimberly Fowler. The basis of defendant's challenge is that Kimberly's statements constituted inadmissible hearsay, and that they violated defendant's constitutional right to confront his accusers. We disagree.

The court heard arguments from each side respecting the admissibility of Kimberly's initial oral statements. The prosecution referred the court to *State v. Duncan* (1978), 53 Ohio St. 2d 215 [7 O.O.3d 380], dealing with excited utterances as an exception to the hearsay rule. The prosecutor also referred to an "extension" of the hearsay rules where reliable, trustworthy, and necessary elements exist. The court admitted Kimberly's initial oral statement, noting:

"That the testimony of the witness as to the condition of the witness, Kimberly, at the time that she was being transported from the scene of the Powell residence to the police station, that there is testimony that she was upset and scared.

"The Court, in its discretion, and wide discretion in this type of a situation, again, in the interest of justice, feels that the testimony of this police officer is necessary and relevant to the proper prosecution of this case, and the court will therefore overrule defense counsel's objection, and you may note your exceptions, sir."

We are satisfied that the court admitted Kimberly's initial oral responses to the officers pursuant to the excited utterance exception, Evid. R. 803(2), which provides:

"The following [is] * * * not exclud-

---

[1] Defendant's assignments of error are:

I

"The trial court committed prejudicial error in admitting oral declarations made by the alleged victim, in the absence of the victim being examined as a witness."

II

"The trial court committed prejudicial error in admitting a written statement made by the alleged victim, in the absence of the victim being examined as a witness."

III

"The verdicts of the trial court, as to each and every count of the indictment, were clearly and manifestly against the weight of the evidence."

ed by the hearsay rule, even though the declarant is available as a witness:

"(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

We note that at the suggestion of the prosecutor, the court ruled that the initial oral statements were admissible pursuant to Evid. R. 804(A)(5), which defines "unavailability," but does not set forth an exception.

Since the context of the court's ruling clearly demonstrates that the excited utterance exception to hearsay was being properly invoked, we find no error in the court's misstatement of the rule number.

Our inquiry is thus limited to whether the court properly considered the initial oral statements of Kimberly as an excited utterance, pursuant to Evid. R. 803(2). We begin by noting that:

"* * *[A]n appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." *State* v. *Duncan* (1978), 53 Ohio St. 215, 219 [7 O.O.3d 380].

Applying the wide discretion prescribed by *Duncan,* we examine whether, pursuant to Evid. R. 803(2), Kimberly's statements were (1) relating to a startling event or condition; (2) made while she was under the stress of excitement; and (3) whether her stress was caused by the event or condition.

We find nothing unreasonable in the determination that a child who has suddenly discovered herself to have been an unwitting participant in incest has experienced a "startling event or condition." It was neither unreasonable to determine that she remained under the stress of excitement — indeed, a child who suddenly runs away from home and is found hiding in a cubbyhole by two police officers can reasonably be ex-

pected to be "scared and upset," as characterized by Patrolman Fringley. It is also clear that the stressful situation was directly caused by her newfound awareness of the incest of which she had been the victim. Accordingly, we find no abuse of discretion in the trial court's admission of Kimberly's oral statements.

Defendant also challenges the admission of Kimberly's statements on the ground that they violate his constitutional right to confront his accusers. We disagree. A strong line of decisions has established that a valid exception to the hearsay rule does not violate a defendant's confrontation rights. See, *e.g., Mattox* v. *United States* (1895), 156 U.S. 237 (co-conspirator's declarations do not violate right of confrontation); *Dutton* v. *Evans* (1970), 400 U.S. 74 (former testimony of now-unavailable witness does not violate right of confrontation); *California* v. *Green* (1970), 399 U.S. 149 (past recollection recorded does not violate right of confrontation); *United States* v. *Kelly* (C.A.2, 1965), 349 F. 2d 720 (public records exception does not violate right of confrontation). In each of the above cases, the controlling factor has been the indicia of reliability accorded the hearsay exception.

We recognize that statements which fall within the enumerated exceptions to the hearsay rule are the result of prolonged judicial rule-making experience so as to satisfy considerations of fairness and trustworthiness.

Accordingly, we hold that the proper admission of an excited utterance under the Ohio Rules of Evidence does not violate an accused's right to confrontation.

Defendant also challenges the court's admission into evidence of corroborating oral statements made by Kimberly months after defendant's arrest. These statements were made to Detective Kolada, who also testified at trial. While we agree that these latter statements were inadmissible hearsay,

we nevertheless conclude their admission was harmless error. See *infra,* our discussion of defendant's second assigned error.

Defendant's first assignment of error is not well-taken.

## II

For his second assignment of error, defendant contends that the trial court erroneously admitted Kimberly's written statement which further detailed the allegations of incest. We agree with defendant's contention but also conclude that it was harmless error.

Unlike the excited utterances made by Kimberly when she was first discovered by the police, her unsworn written statement falls within no recognized exception to the hearsay rule and is consequently inadmissible.

Much of the confusion at trial resulted from the prosecutor's persistent referral to what he called the "open-ended hearsay rule." The state continues to rely upon our decision in *State* v. *Kilbane* (July 3, 1979), Cuyahoga App. Nos. 38428, 38383, 38483, unreported, which predates the adoption of the Ohio Rules of Evidence. The *Kilbane* court held that, because it was persuaded by Fed. R. Evid. 804(b)(5) (usually referred to as the "catch-all" exception), and because it recognized a common-law tendency toward an "open-ended" exception, it would allow into evidence a written statement which would qualify under no recognized exception to the hearsay rule.

The Ohio Rules of Evidence became effective in July 1980. Though the rules are modeled upon the Federal Rules of Evidence, the Ohio rules contain neither of the "catch-all" exceptions to the hearsay rule which are found in Fed. R. Evid. 803(24) and 804(b)(5). This deliberate omission can leave no doubt but that a "catch-all" exception was never intended for the Ohio rules.

We note that, while appellee has cited Evid. R. 804(b)(5) in its brief as the Ohio "open-ended" hearsay exception, this rule in Ohio deals with statements by a deceased, a deaf-mute, or an incompetent person. It is Fed. R. Evid. 804(b)(5) which is the "open-ended" exception, and which is inapplicable in the state courts. Unless an exception to hearsay is specifically delineated in the Ohio Rules of Evidence, we are not free to invoke reliability and probativeness to create one. Thus, since Kimberly's written unsworn statement and her later oral statements fit in no recognized exception, and since Ohio courts cannot admit hearsay statements on a finding of reliability and probativeness alone, we hold that Kimberly's written and later oral statements were inadmissible.

We nevertheless find the error to be harmless. We are confronted with a detailed confession by defendant, as well as Kimberly's properly admitted excited utterances. As the Ohio Supreme Court has stated, with respect to determinations of harmless and prejudicial error:

" '* * * [U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See, *Chapman* v. *Calif.,* 386 U.S. 18, 24 (1967). In this case, we conclude that the "minds of an average jury" would not have found the State's case significantly less persuasive had the testimony * * * been excluded. The admission into evidence of these statements, therefore, was at most harmless error.' " *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 216 [9 O.O.3d 152] (quoting *Schneble* v. *Florida* [1972], 405 U.S. 427).

We find no reasonable possibility that defendant would not have been convicted on his confession and Kimberly's excited utterances alone. Accordingly, admission of her written statements and later oral statements was harmless error, and defendant's second assignment of error is overruled.

## III

In his third assignment of error, defendant posits that the guilty verdicts on all six counts were manifestly against the weight of the evidence. Specifically, defendant challenges the court's finding that a crime was actually committed, venue, dates of the offenses, and the evidence of force. We disagree.

It is well-settled that, outside of a confession, there need only be *some* evidence proving *some* material element of the crime to establish the *corpus delicti. State* v. *Maranda* (1916), 94 Ohio St. 364; *State* v. *Black* (1978), 54 Ohio St. 2d 304 [8 O.O.3d 296]. Thus, defendant's confession, which stressed that "over the years" he had been engaging in various forms of sexual contact with his stepdaughter while "telling" her "not to tell anyone," was properly admitted, because it was corroborated by Kimberly's excited utterances.

There was substantial evidence from which the court could base its finding of guilty on all six counts and, on appeal, we should not disturb such a verdict. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340]. Defendant's contentions of lack of venue are not well-taken, since there was testimony that the family lived in Strongsville at least part of each of the years charged in the indictment (1979-1984). R.C. 2901.12(H) requires only that, in a continuing course of criminal conduct, the offender may be tried in a jurisdiction "in which one such offense or any element thereof occurred."

In relation to the exact dates the rapes occurred, even without Kimberly's written statement (which would have placed their inception in 1979), her oral statement indicated that the rapes were ongoing, and defendant's own confession indicated they had been "over the years." In such a case:

"* * * [A]n indictment * * * is sufficient if it can be understood therefrom: '* * * that the offense was committed at some time prior to the time of finding of the indictment or filing of the information.' * * * [T]he state was not obligated to make specific proof of time as alleged, provided the offenses charged were established as having occurred within a reasonable time in relation to the dates fixed in the indictment." *State* v. *Carey* (1958), 107 Ohio App. 149, 156 [8 O.O.2d 49].

Accordingly, we cannot, on review, state that the dates were not "established as having occurred within a reasonable time" as they were fixed in the indictment.

Defendant further challenges the trial court's finding of forcible rape as to the first four counts, when the statutory age limitation also applied, and as to the last two counts, when no age limitation applied. Defendant states that no evidence of force was present.

We disagree. Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. *State* v. *Martin* (1946), 77 Ohio App. 553 [33 O.O. 364]; *State* v. *Wolfenberger* (1958), 106 Ohio App. 322 [7 O.O.2d 73]. In the within case, we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome. Consequently, the forcible element of rape was properly established. The verdict was not against the manifest weight of the evidence and defendant's third assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CORRIGAN, J., concurs.

PARRINO, C.J., concurs in judgment only.